UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 504 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| DONALD WILLIAMS | ) | |

**GOVERNMENT'S AMENDED RESPONSE TO DEFENDANT DONALD
WILLIAMS's MOTION FOR COMPASSIONATE RELIEF**

Defendant Donald Williams has moved this Court *pro se* for compassionate
release pursuant to 18 U.S.C. § 3582(c)(1)(A). The government submits this amended
response pursuant to the Court's July 1, 2020 Order. The government has also
submitted Williams's medical records from the Bureau of Prisons as an under seal
exhibit. R. 133 ("Med. Rec."). Due to a clerical oversight, the government is filing this
motion late—it was due July 9, 2020. (The government filed its initial response on
July 10, 2020. After filing, the government noticed a few typographical errors and
now seeks leave to file this amended response on the morning of July 11, 2020). The
government apologizes to the Court and Mr. Williams for the lateness of this filing,
requests permission to file this amended response *nunc pro tunc*, and requests that
Williams's deadline to file a reply be extended from July 16, 2020 (Thursday) to July
20, 2020 (Monday).

As discussed below, the Court should deny Williams's motion. This Court lacks
authority to grant Williams's compassionate release motion, in light of his failure to
satisfy the statute's requirements of showing that he exhausted his administrative
remedies. Further, while Williams has demonstrated "extraordinary and compelling

reason" for a sentencing reduction based on his underlying health conditions, releasing Williams would be inconsistent with the factors set forth in 18 U.S.C. 3553(a).

## BACKGROUND

### *Offense Conduct and Procedural History*

As summarized in the Presentence Investigation Report (R. 112) and Williams's plea agreement (R. 94), Williams was the leader of a large narcotics operation that distributed cocaine and heroin in and around Chicago from 2012 to 2015. Williams purchased his narcotics on credit from a drug trafficking organization based in California with close ties to the Sinaloa Cartel (the Aragon Contreras DTO). The Aragon-Contreras DTO shipped kilogram quantities of cocaine and heroin to Williams in Chicago via FedEx and Amtrak Express. Williams arranged for several workers to receive the shipments at hotels in downtown Chicago or at Chicago's Union Station, and to bring the narcotics to stash houses operated by Williams. Williams then sold the narcotics and laundered a portion of the proceeds back to the Aragon-Contreras DTO by making, or directing his workers to make, structured deposits into DTO-controlled bank accounts. During the course of the conspiracy, Williams managed and supervised at least 5 different workers. PSR, ¶ 31. In total, Williams was responsible for receiving and distributing or attempting to receive and distribute at least 120 kilograms of cocaine and 4 kilograms of heroin, and laundering over $3 million in drug money. R. 94, pp. 3-6; R. 112, ¶¶ 10-21.

On August 19, 2015, a grand jury returned an indictment charging Williams with conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. § 846 (Count One), and possession with intent to distribute heroin and cocaine, in violation of 21 U.S.C. § 841(a)(1). On August 8, 2017, Williams pleaded guilty, pursuant to a written plea agreement, to Count One.

On October 29, 2018, the Court held a sentencing hearing. The Court adopted the PSR's guidelines calculation, finding that Williams was a total offense level of 37 and a criminal history category of VI, leading to an advisory guideline range of 360-life. R. 112, ¶ 119. The government moved the Court pursuant to Guideline § 5K1.1 to sentence Williams to 60 percent of the low end of the guidelines, or 216 months. The Court ultimately sentenced Williams to a substantially below-guideline term of 120 months' imprisonment. R. 122.

Williams is currently serving his sentence at FCI Milan. To date, Williams has served approximately 45 months of his 120-month sentence (including credit for time served in pretrial custody). On June 19, 2020, Williams filed a letter to the Court that the Court has construed as a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). R. 130, 131. In the letter, Williams argues that certain underlying physical health conditions make him particularly susceptible to getting very sick if he were to contract COVID-19, and that the Court should therefore release him.

### *Williams's Criminal History*

Williams has an extensive criminal history, which made him a criminal category of VI in this case. R.122, ¶ 55. In September 2005, he was convicted of

possession of a controlled substance and sentenced to 18 months' imprisonment. In December 2005, in three separate criminal cases, Williams was convicted of aggravated battery of a peace officer and two counts of possession of a controlled substance and sentenced to a total term of 2 years' imprisonment. In December 2010, Williams was again convicted of possession of a controlled substance (15-100 grams of cocaine) and sentenced to 4 years' imprisonment.  Williams also has multiple other convictions for driving without a valid driver's license, and possession of marijuana. R. 112, ¶¶ 44-54.

### BOP Response to COVID-19 Pandemic

As reported on the Bureau of Prisons' website, in January 2020, the Bureau of Prisons began a course of action to respond to the spread of COVID-19.[1] Phase One of this course of action included the creation of an agency task force working in conjunction with subject matter experts from the Center for Disease Control and Prevention and the World Health Organization to review guidance about best practices to mitigate transmission.[2] On March 13, 2020, as part of Phase Two of the course of action, the Bureau of Prisons began implementing various measures to mitigate the spread of the virus. These measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. The Bureau of Prisons also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk

---

[1]  *See* www.bop.gov/resources/news/20200313_covid-19 (last visited on June 24, 2020).

[2]  *See*  www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited on June 24, 2020).

factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. *Id.*

Subsequent phases of the course of action included the quarantine and isolation of all new inmates with asymptomatic inmates being quarantined for fourteen days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, the maximization of telework for staff members, and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at Bureau of Prisons facilities. *Id.* On April 1, 2020, as part of Phase Five of its COVID-19 action plan, the Bureau of Prisons secured all inmates to their assigned cells or quarters to decrease the spread of the virus.[3] On April 13, 2020, as part of Phase Six of its COVID-19 action plan, the BOP continued to secure all inmates to their assigned cells or quarters to decrease the spread of the virus.[4] Thereafter, on May 18, 2020, the BOP extended the implementation of Phase 7 of its COVID 19 plan until June 30, 2020.[5] Phase Seven extends all measures from Phase Six, including measures to contain movement and decrease the spread of the virus. Further details and updates of Bureau of Prisons' modified operations are available

---

[3]   *See* www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited on June 24, 2020).
[4]   COVID-19 Action Plan: Phase Six, April 13, 2020, https://www.bop.gov/resources/news/pdfs/20200414_press_release_action_plan_6.pdf (last visited June 12, 2020).
[5]   Bureau of Prisons COIF-19 Action Plan: Phase Seven, May 20 2020, https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited June 12, 2020).

to the public on the Bureau of Prisons website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

## ARGUMENT

The Court should deny Williams's motion because there is no evidence that he has attempted to exhaust his administrative remedies, as required under 18 U.S.C. § 3582(c)(1)(A). Williams's motion also fails on the merits. While, in the face of the COVID-19 pandemic, Williams's has demonstrated an "extraordinary and compelling reason" warranting a sentencing reduction based on his underlying health conditions, it is outweighed by the 3553(a) factors, which militate strongly in favor of his continued incarceration.

## I. Williams Has Not Satisfied the Legal Requirements for Relief Under 18 U.S.C. § 3582(c)(1).

### A. Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i)     extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g); and

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.*

Under this statute, a sentence reduction must be consistent with applicable policy statements issued by the U.S. Sentencing Commission. § 3582(c)(1)(A). In addition to finding "extraordinary and compelling" reasons for the reduction, the Court must also find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" per U.S.S.G. § 1B1.13(2). Finally, the Court must consider the 18 U.S.C. § 3553 sentencing factors to the extent relevant. *Id.*

Congress directed that the Sentencing Commission issue policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3852(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Pursuant to this directive, § 1B1.13 of the Sentencing Guidelines Manual sets forth the Commission's policy statement relating to § 3582(c). Guideline § 1B1.13

provides that under § 3852(c)(1)(A), a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "the defendant is not a danger to the safety of any other person or to the community"; and (3) "the reduction is consistent with this policy statement." Application Note 1 to Guideline § 1B1.13 identifies factors that may constitute "extraordinary and compelling reasons" for a sentence reduction, including a defendant's medical condition, age, family circumstances, and an open-ended category for "other reasons."

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), the defendant must show that:

(1) he has requested relief from the BOP and exhausted any administrative appeals in that process;

(2) there exist extraordinary and compelling reasons that warrant a sentence reduction;

(3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and

(4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

## B. Williams Has Not Complied With § 3582(c)(1)'s Requirement That He Exhaust His Administrative Remedies.

### 1. The Administrative Process

The Bureau of Prisons has established an orderly process for review of requests for reductions of sentence and compassionate release:

A request for a motion under 18 U.S.C. 4205(g) or 3582(c)(1)(A) shall be submitted to the Warden. Ordinarily, the request shall be in writing, and submitted by the inmate. An inmate may initiate a request for consideration under 18 U.S.C. 4205(g) or 3582(c)(1)(A) only when there are particularly extraordinary or compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing. The inmate's request shall at a minimum contain the following information:

(1) The extraordinary or compelling circumstances that the inmate believes warrant consideration.

(2) Proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

28 C.F.R. § 571.61(a). The Bureau of Prisons "processes a request made by another person on behalf of an inmate [for example, defendant's counsel] in the same manner as an inmate's request." *Id.* § 571.61(b).

The Bureau of Prisons' regulations also establish procedures for the consideration and administrative review of compassionate release requests involving the Warden, General Counsel, and Director of the Bureau of Prisons. 28 C.F.R. § 571.62(a). If a request for compassionate release is denied at any level of the Bureau of Prisons' internal review process, the inmate is entitled to "written notice and a statement of reasons for the denial." 28 C.F.R. § 571.63(a). When an inmate's request is denied by the Warden, the "inmate may appeal the denial through the Administrative Remedy Procedure (28 CFR part 542, subpart B)." *Id.*

Consistent with the statutory exhaustion requirement, the Bureau of Prisons' program statement on compassionate release requests states that "an inmate may file a request for a reduction in sentence with the sentencing court after receiving a BP-11 response [from the Warden] under subparagraph (a), the denial from the General Counsel under subparagraph (d), or the lapse of 30 days from the receipt of such a request by the Warden of the inmate's facility, whichever is earlier." *See* Bureau of Prisons Program Statement No. 5050.50 (rev. Jan. 17, 2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf (last visited July 10, 2020). The Bureau of Prisons' regulations make clear that "[i]n the event the basis of the request is the medical condition of the inmate, staff shall expedite the request at all levels." 28 C.F.R. § 571.62(c).

The Bureau of Prisons' receipt and consideration of compassionate release requests occurs against the backdrop of an annual reporting requirement to Congress. 18 U.S.C. § 3582(d)(3). By requiring the Bureau of Prisons to submit annual reports about its handling of compassionate release requests, Congress demonstrated that it clearly understood the importance of requiring inmates to submit requests through established Bureau of Prisons channels and intended that procedure to be followed.

### 2. Williams Has Not Complied with the Statutory Exhaustion Requirement.

Williams makes no claim that he has exhausted his administrative remedies. The BOP has confirmed that it has no record of any administrative request for a sentence reduction from Williams. Thus, Williams has failed to meet his burden of

establishing that he has exhausted his administrative remedies, thereby depriving the Court of authority to grant him a sentence reduction. *See United States v. Gold*, 2020 WL 2197839, *2 (N.D. Ill. May 6, 2020) (J. Bucklo) (stating that, as the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction).

### 3. The Statutory Exhaustion Requirement is Mandatory And Cannot Be Waived by Courts.

When Congress enacted Section 603 of the First Step Act, it included an exhaustion requirement to ensure that Bureau of Prisons officials would have the first opportunity to review and consider a defendant's request for a sentence reduction or compassionate release. Congress demonstrated its intent that the Bureau of Prisons be given a minimum of 30 days to review an inmate's request before the issue is brought to court, by permitting inmates to pursue relief from the court only after the completion of the administrative appeal process or, at a minimum, 30 days after the warden's receipt of the inmate's administrative request.

In *United States v. Taylor*, 778 F.3d 667 (7th Cir. 2015), the Seventh Circuit held that "district courts have subject-matter jurisdiction over—that is, the power to adjudicate—a § 3582(c)(2) motion even when authority to grant a motion is absent because the statutory criteria are not met." *Id.* at 670 (noting circuit split on whether statutory criteria for relief under § 3582(c) are jurisdictional). *Taylor* made clear that the statutory criteria for seeking a sentence reduction under § 3582(c) "may be mandatory and even strict" even though they do not rise to the level of being jurisdictional requirements. *Id.*

Since *Taylor*, the Seventh Circuit has consistently affirmed the denial of sentence reduction motions under § 3582(c)(2) on the ground that, where the defendant failed to meet the statutorily specified criteria, the district court lacked authority to grant relief. *See, e.g.*, *United States v. Jehan*, 876 F.3d 891, 895 (7th Cir. 2017) (affirming district court's denial of motion under § 3582(c)(2) on the ground that she lacked authority to reduce sentence because one of the statutory criteria—that defendant was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission"—had not been met); *see also United States v. Claiborne*, No. 17-1763, 2017 WL 4621217, at *1 (7th Cir. Sept. 28, 2017) (same); *United States v. Howard*, No. 17-1947, 2017 WL 9485590, at *2 (7th Cir. Sept. 28, 2017) (same); *United States v. Koglin*, 822 F.3d 984, 986 (7th Cir. 2016) (same); *United States v. Jackson*, 637 F. App'x 223, 224 (7th Cir. 2016) (same); *United States v. McCarroll*, 811 F.3d 975, 977-78 (7th Cir. 2016) (same); *see also United States v. Taylor*, 627 F.3d 674, 676 (7th Cir. 2010) (same).

This long line of cases establishes that when a defendant fails to meet the statutory criteria in § 3582(c) for seeking a sentence reduction—such as failing to comply with the statutory exhaustion requirement—courts lack authority to grant relief. Courts have applied this same principle in denying motions for release based on COVID-19 when defendants have not complied with the statutory exhaustion requirement. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (describing defendant's failure to comply with statutory exhaustion requirement as "a glaring roadblock foreclosing compassionate release at this point" and stressing that BOP's

"extensive and professional efforts to curtail [COVID-19's] spread" underscore the importance of "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement"). Because Williams has not complied with § 3582(c)(1)'s statutory exhaustion requirements, this court cannot grant Williams the relief he seeks.

Nor can the statutory exhaustion requirement for compassionate release motions be waived by courts. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) ("[w]here Congress specifically mandates, exhaustion is required"); *Ross v. Blake*, 136 S. Ct. 1850, 1855 (2016) (rejecting as "freewheeling" lower court's creation of "special circumstances" exception to statutory exhaustion requirement and permitting only the exception expressly defined by statute).

Consistent with Supreme Court precedent and this Court's rulings in other cases, since the COVID-19 outbreak, no court of appeals has found § 3582(c)(1)'s exhaustion requirement to be waivable, and the vast majority of courts have found that the requirement cannot be waived. *See United States v. Allegra*, No. 15 CR 243, Dkt. No. 232 (N.D. Ill. Apr. 13, 2020); *United States v. Beck*, No. 11 CR 640 (N.D. Ill. June 1, 2020); *United States v. Manning*, No. 15 CR 50007 (N.D. Ill. Apr. 7, 2020); United States v. Carter, No. 18 CR 86-JMS-DML, 2020 WL 1808288, at *1 (S.D. Ind. Apr. 9, 2020); *United States v. Fevold*, No. 19 CR 150, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020) (denying compassionate release to FCI-Elkton prisoner because he failed to exhaust administrative remedies); *United States v. Albertson*, No. 16 CR 250-TWP-MJD, 2020 WL 1815853 (S.D. Ind. Apr. 8, 2020); *United States v. Brown*, No.

17 CR 111, 2020 WL 1703859 (E.D. Wis. Apr. 8, 2020); *United States v. Moskop*, No. 11 CR 30077, 2020 WL 1862636 (S.D. Il. Apr. 14, 2020).

Accordingly, this Court lacks authority to grant defendant relief.

Even if waiver were permitted, it would be inappropriate in this case. In light of the Attorney General's directives to BOP and BOP's corresponding actions, this is not a time when Williams's pursuit of administrative remedies within BOP could be deemed futile from an *ex ante* perspective, or otherwise provide a basis for waiving § 3582(c)(1)(A)'s exhaustion requirement. Here, Williams has given the BOP no opportunity to consider his request for compassionate release. Nor is this a case where exhaustion should be excused because BOP's administrative process is incapable of timely granting Williams the relief he seeks. The Attorney General's memos make clear that BOP has an array of options that it can use to provide Williams with the relief he seeks and obviate the need for further litigation before this Court. Thus, there is no basis here for excusing the statutory exhaustion requirement, even were that permitted by the statute. Pursuant to the statutory framework that Congress has devised, BOP must be given the opportunity to make a decision concerning Williams's request in the first instance.

## C. Williams Has Not Established that Extraordinary and Compelling Reasons Warrant His Release at this Time

Congress directed that the Sentencing Commission issue policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3852(c)(1)(A)(i). See 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification

provisions in section 3582(c)(1)(A) of Title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.").

Before the passage of the First Step Act, the Sentencing Commission concluded that "extraordinary and compelling reasons" were limited to the following four scenarios:

1.  The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).

2.  The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. Id. § 1B1.13 cmt. n.1(B).

3.  The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. Id. § 1B1.13 cmt. n.1(C).

4.  If there were "an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. § 1B1.13 cmt. n.1(D).

The changes to 18 U.S.C. § 3582(C)(1)(A) made by the First Step Act altered the procedure through which compassionate release could be sought, that is, by allowing defendants to bring their requests to court after exhausting their administrative remedies, but it did not alter the grounds for granting relief.

Williams fails to satisfy the standard for release under § 3852(c)(1)(A)(i), which requires that he establish that, "after considering the factors set forth in section 3553(a) . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*[6]

As construed by the Court, Williams argues that he has demonstrated "extraordinary and compelling reasons" based on his underlying health conditions. The PSR and Williams's BOP medical records confirm that he suffers from Type 2 diabetes mellitus, which the CDC lists as an underlying condition that increases the risk of a severe illness from COVID-19.[7] Dkt. 112, ¶ 94; Med. Rec., 35, 39, 40.

Further, although Williams does not mention the issue, his BOP medical records suggest that he may also be obese (defined as having a body mass index ("BMI") of 30 or over), which the CDC also lists as COVID-19 high risk factor. *Id.* Specifically, Williams's records indicated that in December 2019, he had a height of 6'8" and weighed 238 pounds, which translates to a BMI of 36.2. Med. Rec., 34.

Williams's records also establish that he suffers from hypertension. The CDC's most recent guidance does not identify hypertension as a condition that increases a person's risk of serious illness from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

---

[6] Williams is 38-years old and therefore cannot obtain relief under § 3582(c)(1)(A)(ii).

[7] Available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

medical-conditions.html (last visited July 6, 2020.) Instead, it notes that, based on the limited information that is available, people with hypertension "might" be at increased risk of COVID-19 complications. *Id.*

In light of the ongoing COVID-19 pandemic, the government agrees that Williams has established that he suffers from at least one serious physical or medical condition—Type II diabetes—that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," Guidelines § 1B1.13 cmt. n.1(A)(ii)(I), in that Williams's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished within the environment of a correctional facility, by the medical condition itself. Accordingly, Williams has demonstrated an extraordinary and compelling reason for release.

This showing, however, does not automatically entitle defendant to relief under 18 U.S.C. § 3582(c)(1). Pursuant to the statute and the applicable policy statement, the Court must also consider whether defendant poses a danger to the community, as well as all other pertinent § 3553(a) factors, including defendant's history and characteristics, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of the Bureau of Prisons' efforts to maintain the safety of inmates. On balance, these factors demonstrate that early release is not warranted in this case.

First, Williams has served less than half of his substantially below guidelines sentence. Williams has served several prison terms of comparable length in the past,

which were insufficient to stop him from reoffending. This cuts strongly against an early release.

Second, based on his criminal history, Williams poses a risk of recidivism (though the Court should balance this against his cooperation in this case, as set out below). The instant case involved a massive, multi-year drug distribution and money laundering conspiracy in which Williams played a sustained leadership role. Williams committed the instant offenses after having previously sustained at least 4 prior felony narcotics offenses (not counting cannabis possession), and at least one crime of violence. Prior prison terms have failed to deter Williams from reoffending. To the contrary, the seriousness of his criminal conduct has steadily escalated throughout his life, peeking with the instant case. Simply put, the public interest in deterring and incapacitating Williams outweighs the risk that COVID-19 poses to his health.

Third, Williams has provided no release plan, and his prospects are not good. Williams has little to no legitimate employment history, which makes it unlikely he would be able to lawfully support himself if released. Further, Williams's long history of bond violations shows he is a poor candidate for release on home confinement. In this case, for example, Williams's bond was revoked after he was twice arrested for domestic disputes, resisting arrest, and filing a false police report. R. 112, ¶ 6. Williams also has multiple prior bond forfeitures in other cases. R. 7.

Fourth, the risks to Williams's health while in custody are substantially mitigated by the fact that (1) Williams receives regular, appropriate treatment for all

his underlying medical conditions at FCI-Milan; and (2) FCI-Milan continues to take extraordinary preventative steps (discussed in detail above) to protect inmates from COVID-19 (as of July 7, 2020, according to the BOP's website, FCI-Milan had 13 confirmed COVID-19 cases among inmates (out of 1,308 inmates, a 1% infection rate), and 1 confirmed case among staff)). Notably, Williams has not provided the Court with any basis to believe he would have access to regular medical care in a non-custodial setting.

On the other hand, in conducting a complete and fair 3553(a) analysis, the Court should also consider that Williams has provided extensive, critical cooperation to the government over the past several years, and that cooperation is ongoing. The Court could reasonably view Williams's cooperation as evidence that he has meaningfully reformed himself. The government maintains that the 3553(a) factors weigh in favor of continued incarceration despite Williams's cooperation, but acknowledge that his cooperation makes the 3553(a) analysis a much closer call (the government can provide further details of Williams's cooperation to the Court upon request).

## II. This Court Is Not Authorized to Order Williams Transferred to Home Confinement.

To the extent that Williams seeks an order that he serve the remainder of his sentence in home confinement, that request should be denied because the Court lacks authority to grant such a request. Under 18 U.S.C. § 3624(c)(1), the B.O.P.—but not the courts—has authority to place inmates in community confinement facilities

during the final portion of their sentences for up to 12 months. Specifically, the statute provides:

(1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Section 3624(c)(2), as amended § 602 of the First Step Act, provides:

(2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.

18 U.S.C.A. § 3624.

This provision in no way guarantees a prisoner a specific placement; it merely directs the Director of the B.O.P. to consider it. Nor does it provide the courts with any authority over decisions with respect to home confinement designations—or any other designation decisions. Reservation to the B.O.P. of determinations regarding the designation of defendants—whether to particular correctional institutions, or reentry centers, or home confinement—is reasonable given that the B.O.P., rather than the Court, is the best position to take into account defendant's individual circumstances, as well as systemic concerns, such as, in the present circumstances, the impact of COVID-19 on its facilities, staff, and the other inmates under its care, as well as public safety.

Neither 18 U.S.C. § 3582(c)(1) nor the recently enacted CARES Act change provide the Court with authority over the locations where a defendant is designated

to serve his sentence. Section 3582(c)(1), as amended by Section 603 of the First Step Act, provided the courts with no additional authority with respect to the implementation of federal prison sentences, such as by ordering a defendant's designation to home confinement—such authority continues to rest solely with the BOP, under the direction of the Attorney General. *See United States v. Edwards*, No. 3:14-CR-30173-NJR-3, 2019 WL 5555559, at *4 (S.D. Ill. Oct. 28, 2019); *United States v. Tovar-Zamorano*, 2019 WL 2005918 at *2 (D. Kan. May 7, 2019) (First Step Act "does not divest the BOP of its statutory discretion to determine the location of an inmate's imprisonment"); *Davis v. United States*, No. 17 CR 294-DRH, 2017 WL 2214874, at *2 (S.D. Ill May 19, 2017) ("With respect to Petitioner's request in his Petition that this Court make an RRC determination in place of the BOP, it will not, as it is not the role of this Court to conduct an independent review of the § 3621(b) factors and make a de novo determination as to Petitioner's placement in a halfway house."); *United States v. Garza*, No. 18-CR-1745-BAS, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020) (holding that courts lack the authority to designate home confinement and finding that the Bureau of Prisons alone has the statutory authority to choose the location where prisoners serve their sentences).

The CARES Act extends the authority of the Attorney General to lengthen the maximum amount of time for which the BOP is authorized to place a prisoner in home confinement under the first sentence of 18 U.S.C. § 3624(c)(2):

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the [BOP] may lengthen the maximum amount of time for which

the Director is authorized to place a prisoner in home confinement under the first sentence of [18 U.S.C. § 3624(c)(2)], as the Director deems appropriate.

134 Stat. at 516 (CARES Act § 12003(b)(2)). It does not provide any authority over home confinement to the courts.

Although the Court may not order that an inmate be transferred to home confinement, it may, in addition to reducing the sentence, "impose a term of probation or supervised release, with or without conditions, that does not exceed the unserved portion of the original term of imprisonment." The conditions the Court may require include home confinement. *See* 18 U.S.C. §§ 3582(c)(1), 3563(b)(19), and 3583(d). Accordingly, were the Court to determine that Williams did satisfy the statutory criteria for a reduction in sentence, it could order that Williams serve a period of time in home confinement upon his release. As discussed above, Williams has not satisfied the requisite criteria.

## CONCLUSION

For these reasons, the government respectfully requests that the Court deny Williams's motion.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  */s/ Sean Franzblau*
Sean Franzblau
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 353-5305