

UNITED STATE DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CHICAGO

DONALD WILLIAMS,           )
                           )
    `Petitioner            )
                           )
vs.                        )     15--cr-00504
                           )
                           )
UNITED STATES OF AMERICA,  )
                           )
    Respondent             )

## MOTION TO FILE REPLY TO RESPONSE TO DEFENDANT'S SECOND PETITION AND MEMORANDUM IN SUPPORT OF PETITION FOR RELIEF UNDER THE FIRST STEP ACT, INSTANTER

COMES NOW, your Petitioner in the instant case, pro se, who respectfully files for leave to file this Reply to the Government's Response to his Second Petition and Memorandum in Support of said Petition for relief, instanter, under seal, pursuant to Section 404(b) of the First Step Act of 2018 (FSA) reducing his sentence instanter, or other relief, and in support thereof, states as follows:

### INTRODUCTION

The government has filed a 15-page Response to Petitioner's Second Petition, of which approximately four pages are a recitation of the procedural history of the case, four pages are a summary of the various BOP "Action Plans," with minimal reference to Petitioner's individual circumstances, and two pages that largely summarize the various provisions of the no-longer-applicable USSC § 1B1.13 and acknowledge that Petitioner has met the notice requirements for compassionate release under FSA. Finally the last

three pages concern the individual health challenges of the Petitioner, and the Respondent concedes that Petitioner suffers from asthma:

> Williams's self reporting of a history of asthma, the BOP has treated him by prescribing Albuterol and Mometasone inhalers. Ex. C., 30. While the CDC identifies moderate to severe asthma as an underlying condition that may increase the risk of severe illness from COVID-19, based on the above, there is reason to be skeptical that Williams suffers from any form of asthma.

Response, page 13.

This statement is a masterpiece of unsupported misdirection, misstatement, and minimalization by a non-expert. The court, as an experienced jurist, is well aware of the fact that many defendants, facing years of incarceration, often fail to comment to the Probation Department on underlying health conditions that they may have been able to control before reporting to prison. Federal prison is not a healthy environment, and Milan has proven to be a very dangerous place during the COVID-19 pandemic. The Response does not deny that Milan "failed" its COVID-19 inspection performed by the DOJ's own Inspector General (IG).

The BOP's own medical staff, not noted for prescribing medications without medical justification, has prescribed two strong medicines routinely prescribed for serious asthma sufferers. As noted by the Mayo Clinic:

> Albuterol is used to treat or prevent bronchospasm in patients with asthma, bronchitis, emphysema, and other lung diseases. It is also used to prevent bronchospasm caused by exercise. Albuterol belongs to the family of medicines known as adrenergic bronchodilators. Adrenergic bronchodilators are medicines that are breathed in through the mouth to open up the bronchial tubes (air passages) in the lungs. They relieve cough, wheezing, shortness of breath, and troubled breathing by increasing the flow of air through the bronchial tubes. This medicine is available only with your doctor's prescription.
>
> Mometasone is used to help prevent the symptoms of asthma and improve breathing. When used regularly every day, inhaled mometasone decreases the

2

number and severity of asthma attacks. However, it will not relieve an asthma attack that has already started.

www. mayoclinic.org.

Respondent did not respond to or comment on the other medications that Petitioner has been prescribed by BOP medical staff:

Acute asthma, treated by Albuterol Inhaler, HFA, Proair, HFA, Symbicort 160/4.5, Budesonide 160 MDT, Formoterol, Fumerate Dihydrate.

Amended Petition, page one. Petitioner also suffers from sleep apnea, and has an asthma pump which injects corticosteroids, under the name of Symbicort, which is a further indicator of his tenuous lung function.

## I. RESPONDENT DOES NOT DISPUTE THAT ASTHMA IS A COVID RISK FACTOR

Despite a clumsy and medically-supported attempt to argue that petitioner does not really suffer from asthma, an argument contradicted by its own medical personnel, Respondent does not argue that asthma is not a risk factor for increased risk of mortality from COVID-19:

People with asthma fall into that higher risk category. If you have asthma, COVID-19 may be more likely to affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease.

www.cdc.gov.

As the DOJ has already noted, a prisoner who has established he or she suffers from a chronic medical condition that is a known COVID-risk factor has already met the condition of establishing "extraordinary and compelling circumstances" to preliminarily qualify him for a grant of compassionate release.

In May of 2020, in response to COVID-19 raging through the nation's prisons, DOJ issued an advisory that any individual asserting an underlying physical

3

condition that made him vulnerable to death or serious disease from COVID-19 would be considered to have established the "extraordinary and Compelling Circumstances" required to establish a prima-facie case for Compassionate Release. See: <u>Wise v. United States</u>, Criminal No. ELH-18-72, 10 (D. Md. May. 20, 2020).

"As applied to Wise, the COVID-19 virus presents "extraordinary and compelling reasons" that warrant a reduction of his sentence... "just last week, the Department of Justice adopted the position that any inmate who suffers from the chronic conditions associated with severe illness from COVID-19 are eligible for compassionate release. See ECF 185.

The same case found that the Sentencing Commission guidance that previously informed the basis for considering whether an individual qualified for the old BOP sponsored Compassionate Release process that prevailed prior to the passage of the First Step Act of 2018 was no longer applicable.

<u>Petition</u>, page 7.

Although Respondent correctly notes that the number of COVID-19 cases has dropped at Milan, it does not claim that it has been eradicated. As noted by the BOP's own Director in March, 2021 Congressional testimony, barely half of all BOP correctional officers have availed themselves of vaccinations. A minimal number of vaccines have been offered at Milan, but both factors show that COVID is still a risk at Milan.

## II. PETITIONER IS A CHANGED MAN, AS EVEN THE RESPONDENT IS FORCED TO ADMIT, AND NO RISK TO REOFFEND

On one hand, Respondent argues that Petitioner should not be considered for compassionate release, while admitting that he has continued to assist the government, at considerable physical risk to himself. Shortly after he filed his Second Petition, he was writed out for testimony, and routed by the BOP through Grady County, Oklahoma, a known hotbed of COVID infestation, and is now at the MCC Chicago, another location known for continuing COVID-19 problems. www.vice.com.

4

Unfortunately, Petitioner was transported without proper medication, including his asthma pump and his C-Pap machine, putting him at even more serious risk of morbidity from COVID-19. Unfortunately, this disregard of Petitioner's health and well-being, while he subjects himself to physical risk of harm and retaliation, is all too typical.

> The court will recall that Petitioner cooperated, and has availed himself of virtually every self-improvement program, including ACE, while in prison, including qualifying for RDAP, which would shave one year off his sentence. Petitioner has never been in trouble in prison. His out date is April of 2025, and with RDAP credit, April of 2024. Incorporating 6 to 12 months of half way house puts him home in either April or October of 2023, less than two years from now.
>
> Given the lack of comprehensive medical care or disease prevention at Milan, and health violations well-documented by the DOJ Inspector General, in a recent report, having Petitioner remain in custody will not provide the medical care needed to treat his medical condition.

<u>DOJ, Office of Inspector General Review of FCOP Medical Staffing Challenges,</u> 1, (Mar. 2016). <u>Petition</u>, page 12.

## CONCLUSION

Defendant/Petitioner respectfully moves this Honorable Court grant his Petition for Compassionate Release, order an immediate evidentiary hearing, appoint counsel to represent him in subsequent proceedings, and grant him a reasonable bail during the pendency of the proceeding.

Respectfully Submitted,

By: _____

## CERTIFICATE OF SERVICE

    Petitioner does hereby certify that Petitioner caused to be served a true and correct copy of this Petition was duly served on all attorneys of record on the ⁄ day of May, 2021, through the Prison Mail System.

                                               Signed: _____

RECEIVED

MAY 26 2021 CM

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT




05/26/2021-39

FROM:

Donald Williams
FCI Milan
PO BX 1000
Milan, Mich
48160

TO:

USDC-ND-ILL
219 so. Dearborn
Chic., IL
60604

**PRIORITY MAIL FLAT RATE ENVELOPE POSTAGE REQUIRED**

PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE ®  Retail

**P**  US POSTAGE PAID
$7.95
Origin: 60048
05/15/21
1644640048-2

PRIORITY MAIL 1-DAY®

0 Lb 2.40 Oz
1026

EXPECTED DELIVERY DAY: 05/17/21

C005

SHIP TO:
219 S DEARBORN ST
Chicago IL 60604-1702

USPS TRACKING® #


9505 5110 2408 1135 4324 89

RECEIVED
MAY 26 2021 mb
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT


PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2


USPS.COM/PICKUP

- Expected deli
- Most domesti
- USPS Trackin
- Limited intern
- When used in

*Insurance does no
Domestic Mail Man
** See International

FLAT R
ONE RATE